1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11
12

THEODORE J. ABERNATHY,

                                    Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security, [1]

                                    Defendant.

Case No. 3:12-cv-05999-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

13
14
15
16
17
18

        Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance and supplemental security income ("SSI") benefits.

Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the

parties have consented to have this matter heard by the undersigned Magistrate Judge.  After

reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons

set forth below, defendant's decision to deny benefits should be affirmed.

19
20

FACTUAL AND PROCEDURAL HISTORY

21
22
23
24

        On April 27, 2009, plaintiff filed an application for disability insurance benefits and

another one for SSI benefits, alleging disability as of January 1, 2005, due to a bipolar disorder,

an anxiety disorder, head trauma, shoulder problems, arthritis in his joints, and high blood

pressure. See ECF #8, Administrative Record ("AR") 17, 168.  Both applications were denied

25
26

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

ORDER - 1

upon initial administrative review on September 18, 2009, and on reconsideration on March 9, 2010. See AR 17.  A hearing was held before an administrative law judge ("ALJ") on March 3, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 33-70.

In a decision dated June 9, 2011, the ALJ determined plaintiff to be not disabled. See AR 17-28.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 21, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981, § 416.1481.  On November 28, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on March 4, 2013. See ECF #8.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits because the ALJ erred: (1) in evaluating the medical opinion evidence in the record; and (2) in discounting plaintiff's credibility.  For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged – and thus erred in determining plaintiff to be not disabled – and therefore finds defendant's decision to deny benefits should be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

ORDER - 2

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

ORDER - 4

those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart,

278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d

1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001);

Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining

physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."

Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial

evidence if "it is consistent with other independent evidence in the record." Id. at 830-31;

Tonapetyan, 242 F.3d at 1149.

     A.    Dr. Parker

     In regard to the medical opinion evidence in the record, plaintiff first takes issue with the

ALJ's following findings:

> Robert Parker, PhD, evaluated the claimant in April 2008, noting severe
> depression, anxiety, and social withdrawal.  Dr. Parker stated that the claimant
> does not have any cognitive functional limitations except for moderate
> difficulty with routine tasks.  Dr. Parker determined that the claimant has
> marked or severe difficulty with social functions, including coworker
> interaction, public contact, and work pressure tolerance.  Dr. Parker does not
> believe that the claimant could work regularly and continuously.  Exhibit 6F.

> I do not find Dr. Parker's opinion to be reliable or accurate.  The record does
> not support a finding that the claimant has marked to severe difficulty with
> social interaction and stress tolerance.  He consistently went to group therapy
> sessions.  See Exhibit 1F.  He spends time with friends, even celebrating his
> birthday at a bar with them.  Exhibit 4F, p. 24; see also Exhibits 1F, 20F.  He
> was able to deal with a tax matter involving the Internal Revenue Service.
> Moreover, Dr. Parker did not list any other medical records that he reviewed
> or considered, nor did he appear to perform a mental status examination.
> Rather, he seemingly relied on the claimant's statements.  The claimant's lack
> of credibility undermines the reliability of Dr. Parker's assessment.  For the
> foregoing reasons, I gave Dr. Parker's opinion little weight.

ORDER - 5

AR 25.  Specifically, plaintiff argues the ALJ's stated reasons for rejecting Dr. Parker's opinion are not legally sufficient.  Although not all of those reasons can be upheld, the undersigned finds that overall the ALJ did not err in giving little weight to that opinion.

First, the undersigned agrees with plaintiff that the mere fact that he went to group therapy sessions consistently does not alone demonstrate an ability to maintain appropriate social interactions on a regular and consistent basis within a work setting. See SSR 96-8p, 1996 WL 374184, at *2 (providing that ordinarily, individual's residual functional capacity encompasses "maximum remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule") (emphasis in original).  Second, while the record indicates plaintiff has spent time with friends – including going to a bar with them to celebrate his birthday on one occasion – again it fails to establish a level of social interaction on plaintiff's part that is inconsistent with the limitations Dr. Parker found. See AR 51, 158, 161-62, 192, 366, 373, 529.  Third, as plaintiff points out, the record further fails to show the extent to which he was occupied by dealing with the IRS or the impact dealing with it had on his stress tolerance. See AR 250-1.

Fourth, the fact that Dr. Parker "did not list any other medical records that he reviewed or considered" (AR 25) also is an insufficient reason for rejecting his medical opinion, given that as an examining psychologist there is no requirement that he actually rely on the medical records of other sources as opposed to his own clinical findings.  Fifth, as defendant concedes, Dr. Parker in fact did provide a mental status examination. See AR 386.  That being said, the undersigned finds the ALJ did not err in rejecting the opinion of Dr. Parker on the basis that he "seemingly relied on" plaintiff's statements, given that the ALJ also did not err in finding plaintiff to be less than fully credible as discussed further below. AR 25; see also Morgan, 169 F.3d 595, 601 (9th

ORDER - 6

Cir. 1999) (medical opinion premised to large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted).

Plaintiff points out that the Ninth Circuit has stated "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations." Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).  In Ryan, the Court of Appeals went on to note there was "nothing in the record to suggest" the examining physician in that case relied on the claimant's own "description of her symptoms . . . more heavily than his own clinical observations." Id. at 1200.  In this case, though, Dr. Parker's evaluation report contains little in the way of clinical findings or observations – including the results of the mental status examination noted above – that would support the severity of social functional limitation he found, but rather does seem to be premised almost entirely on plaintiff's self-reports as the ALJ noted. See AR 381-88.

B.   Dr. Clark

Plaintiff also challenges the ALJ's following additional findings concerning the medical opinion evidence in the record:

> Dr. [Roy D.] Clark[, Jr.,] evaluated the claimant in May 2009 and April 2010, stating that the claimant has marked to severe difficulty with simple and detailed instructions, coworker interaction, public contact, and work pressure tolerance.  Exhibits 2F, 18F.  Like Dr. Parker, I do not find Dr. Clark's social assessment to be consistent with the overall record as discussed above.  Nor is Dr. Clark's cognitive assessment consistent with the record, which shows that he could follow instructions from his sister regarding caring for her horses and dogs.  She directs him on yard work and house chores.  See March 2011 Hearing.  I did not find Dr. Clark's opinion to be accurate.  Therefore, I gave it little weight.

AR 26.  First, plaintiff argues the ALJ failed to acknowledge the long-term treating relationship

ORDER - 7

Dr. Clark had with him.  But while it may be true that as a treating physician Dr. Clark "was the most likely to understand how [his] functioning had changed over the years" – as well as the impact plaintiff's mental health condition had on his ability to function over time (ECF #11, p. 17) – based on that relationship, plaintiff has failed to show how any such failure on the ALJ's part prejudiced him.  That is, plaintiff has not pointed to anything specific in the medical records from Dr. Clark that calls the ALJ's above findings into question.

Plaintiff goes on to assert that instead of providing valid reasons for rejecting Dr. Clark's opinion, he merely "offered two generic" ones. ECF #11, p. 17.  The undersigned finds nothing generic about those stated reasons.  For example, the ALJ stated that as with Dr. Parker, he did not find the social functioning limitations assessed by Dr. Clark "to be consistent with the overall record as discussed above." AR 26.  Read properly in context with the ALJ's discussion of the reasons he rejected the social functioning limitations assessed by Dr. Parker, which immediately precedes his discussion of Dr. Clark's opinion, it is reasonable to presume the ALJ was rejecting the latter's opinion for the same reasons he did the former's.  In addition, while many of those reasons are not supported by substantial evidence as discussed above, the record does show that like Dr. Parker, Dr. Clark appears to have based the social functioning limitations he found for the most part on plaintiff's own subjective complaints, particularly as Dr. Clark provided little in the way of clinical findings in support thereof.  See AR 260-63, 473-78.

The undersigned further finds the ALJ did not err in rejecting the cognitive limitations Dr. Clark found on the basis that they conflicted with evidence in the record indicating plaintiff was able to follow instructions from his sister regarding the care he provided for her horses and dogs, as well as the yard work and household chores he did.  See AR 41-42, 56-59, 61-64, 469, 485, 524, 527, 531, 537; see also Morgan, 169 F.3d at 601-02 (upholding rejection of physician's

ORDER - 8

conclusion that claimant suffered from marked limitations in part on basis of claimant's reported activities of daily living, contradicted that conclusion).  Accordingly, the ALJ did not improperly reject the social functioning and cognitive limitations Dr. Clark assessed.

C.   Dr. Eishenhauer and Dr. Fligstein

Lastly in terms of the medical evidence in the record, plaintiff argues the ALJ erred in giving greater weight to the functional assessments provided by Renee Eisenhauer, Ph.D., and Diane Fligstein, Ph.D., two non-examining psychologists, than to those from Dr. Parker and Dr. Clark. See AR 24-25, 413-29, 471.  But as discussed above, the ALJ gave valid reasons for not adopting all of the functional limitations the latter two medical sources found.  In addition, Drs. Eisenhauer and Fligstein did note other independent evidence in the record as support for their assessment, including other independent medical evidence. See AR 415.  Accordingly, here too the undersigned finds no reversible error.

II.   The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

1   Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

2   claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

3   and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

4   malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

5       In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

6   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

7   symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The

8   ALJ also may consider a claimant's work record and observations of physicians and other third

9
10  parties regarding the nature, onset, duration, and frequency of symptoms. See id.

11      The ALJ in this case found plaintiff to be not fully credible with regard to his alleged

12  symptoms and limitations for the following reasons:

13
14      . . . Several inconsistencies in the record undermine [plaintiff's] overall
        credibility.

15      For instance, the claimant testified that he is not certain whether he fell or was
16      assaulted.  He told his providers at Valley Medical Center that someone
        assaulted him.  Exhibit 3F.  Yet, a year and half later after the incident, he told
17      his providers at Navos that he was at a bar, walked out and wandered about
        six miles until he fell into a ditch, and then went to the hospital when his
18      friends took him.  Exhibit 20F.  He testified that he works 2-3 hours per day
19      caring for his sister's animals, although he told one provider that he works up
        to 5 hours or more hours per day on the house and the horses.  Exhibit 20F, p.
20      37, 47.  He testified that he moved into this sister's home because he could not
        live on his own, yet he reported in April 2010 that he cares for his sister's
21      horses while his own home is being remodeled.  Exhibit 16F.

22      The claimant provided inconsistent information to others as well.  He told his
23      chemical dependency provider that he had only 2 alcoholic beverages.
        Exhibit 1F, p. 3.  The emergency room report and the course of events suggest
24      that he drank substantially more than 2 drinks.  Exhibits 3F, 20F.  He tested
        positive for cocaine in October 2007 and he has used marijuana for several
25      years since 2005, even though he led some providers to believe that he did not
        use any drugs or alcohol.  Exhibits 1F, 5-6F.
26
    AR 23-24.  Plaintiff argues the ALJ misrepresented the record in order to create inconsistencies

    ORDER - 10

in his testimony that are not there.  The undersigned does agree that the record does not support all of the inconsistencies the ALJ found.  For example, in regard to the number of hours plaintiff worked per day caring for his sister's animals and doing other work around the house although the record varies somewhat on this issue, it overall shows plaintiff's testimony and self-reporting to be fairly consistent with each other.  <u>See</u> AR 56, 62, 527, 531, 537.  The record further fails to clearly show any real inconsistencies with respect to plaintiff's use of marijuana and self-reports with respect thereto.  <u>See</u> AR 211-15, 217-20, 222-25, 227-35, 237, 369, 533, 572-73.

On the other hand, the positive cocaine test the ALJ noted does conflict with plaintiff's self-reports of otherwise being clean and sober in the record.  In addition, the undersigned finds it was reasonable for the ALJ to presume that the medical records concerning the incident where plaintiff lost consciousness after having gone to a bar in February 2009, and resulting visit to the emergency room, indicate that consumption of alcohol in an amount substantially more than the two drinks he contemporaneously reported had occurred.  <u>See</u> AR 212, 279, 529.  Also in regard to that incident, the ALJ properly found as well that plaintiff gave inconsistent statements to his medical providers with respect thereto.  <u>See</u> AR 279, 529.  Plaintiff's testimony and reports concerning his ability to work for up to several hours per day and follow his sister's instructions, furthermore, is not fully consistent with his alleged inability to live on his own.  Thus, the ALJ did not err in discounting plaintiff's credibility based on these inconsistencies.

The ALJ further discounted plaintiff's credibility on the following basis:

I question the source of the claimant's alleged severe symptoms.  His mental impairments are not new.  He reported that he has had [a] bipolar disorder since childhood. Exhibit 20F, p. 41-45.  However, he acknowledged that his motorcycle shop did well when his dad was "getting sick with Alzheimers." Exhibit 20F, p. 47.  He also managed motorcycle stores and he attended college for several years. Exhibit 3-4E; see March 2011 Hearing.  He saw psychiatrist Roy Clark, MD, for the past 25 years, presumably receiving medication and other treatment.  See March 2011 Hearing.  He was able to

work in spite of his mental impairment.

AR 24.  The undersigned agrees with plaintiff that this was not a valid basis for discounting his

credibility, as the record does indicate his condition worsened around the period of time he lost

his motorcycle business, which was also around the time he alleges he first became disabled.  See

AR 370.  In addition, while plaintiff did report in early September 2007, that he lost his business

"due to financial problems influenced by his drug use" (AR 373), he reported at the same time

that he had stopped coming in to work due to his depression (see AR 370).  In other words, even

if plaintiff's substance abuse ultimately did cause him to lose his business, the record is unclear

as to whether that level of abuse was the result of the mental health problems he was having –

and therefore reflects the state of his overall mental health condition – at the time, or instead was

an entirely separate issue as the ALJ indicated.  See AR 236-38, 257-58, 399.

Next, the ALJ found plaintiff to be not entirely credible because:

A number of unrelated events occurred after 2004.  His motorcycle shop
failed, which he himself attributed to his substance abuse problem.  See, e.g.
Exhibit 5F, p. 13.  He had several disputes with his sister over the parents'
health and heritance.  Exhibit 2F, 4F.  He now lives with her.  Exhibit 1E,
20F.  He had a conflict with the Internal Revenue Service over business
proceeds and taxes in 2006.  Exhibit 2F.  He had emotional difficulty when his
parents' passed in 2004 and 2008, with which he still struggled in 2010.
Exhibit 2F, 4F, 20F.  He sought psychiatric care in September 2009 where he
did not sleep for several weeks and reported extreme paranoia, admitting that
he had not been taking any psychotropic medications for a while.  Exhibit
12F.  He has had no manic episodes since then, and he agreed to take Seroquel
"again" in September 2009.  See March 2011 Hearing; Exhibits 12F, 20F.
Significantly, he stated that he "misses" the high feeling and that he was
productive and social during manic episodes, suggesting that he purposefully
stopped taking medication before the September 2009 incident.  Exhibits 5F,
20F.

I acknowledge that familial conflict and deaths, business failure, finances,
government disputes and other factors could be a significant source of
anguish, distress, and stress.  The claimant continues to place himself in a
living situation with his sister that likely exacerbates his problems.  He likely
has had little motivation to work when faced with the above circumstances.

ORDER - 12

> Notwithstanding the impact of multiple stressors, these are external factors that do not relate his mental impairment. Temporary and situational factors, such as the death of a parent, cannot serve as the basis for a person's disability. Nor can his apparent voluntary lack of treatment serve as the basis of his disability because I must assess his ability in light of effective treatment.

AR 24. Again, the undersigned agrees with plaintiff that much of the ALJ's characterization of the above evidence is not clearly supported in the record. Although each of the events the ALJ mentioned may be "unrelated" in the sense that they are separate happenings, the record fails to clearly show they were merely "external factors" that caused temporary increases in plaintiff's stress, as opposed to exacerbating already ongoing underlying mental health problems. See AR 218, 222, 250-53, 256-58, 307, 309, 319, 335, 350, 501, 507. If the latter is true, the "situational factors" the ALJ notes instead would reveal the impact plaintiff's mental health condition had on his ability to handle those types of stressors.

The undersigned, though, finds no error in the ALJ's determination to discount plaintiff's credibility on the basis that he had stopped taking medications for a while. Although the record does not clearly suggest plaintiff stopped doing so because he missed "the high feeling" he got during his manic episodes (AR 25) – particularly given that he later resumed taking them and recognized the greater benefit he received therefrom (see AR 501, 508, 532-33, 535) – plaintiff did not provide any valid reason for having stopped in the first place. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not following prescribed course treatment "can cast doubt on the sincerity of the claimant's pain testimony").[3] The ALJ further did not err in noting the improvement plaintiff experienced once he resumed his medication as an

---

[3] Plaintiff also takes issue with the ALJ's failure "to elicit an explanation for the lack of medication." ECF #11, p. 11. But an ALJ's duty to further develop the record comes into play only where it contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150. Here, though, the evidence in the record is not ambiguous or inadequate, but rather shows the absence of any valid explanation on plaintiff's part for having stopped taking his medication.

ORDER - 13

1  additional factor to consider in discounting his credibility. <u>See</u> <u>Morgan</u>, 169 F.3d at 599; <u>Tidwell</u>

2  <u>v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).

3  <u>CONCLUSION</u>

4          Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded

5  plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

6          DATED this 22nd day of November, 2013.

7

8

9

10

11                                          Karen L. Strombom
                                            United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 14